617 So.2d 1255 (1993)
Geneva DEVILLE, Plaintiff-Appellant,
v.
STATE FARM INSURANCE CO., et al., Defendants-Appellees.
No. 92-914.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
*1256 Kathy Fontenot Deshotel, Ville Platte, for plaintiff-appellant.
Matthew Joseph Hill Jr., Lafayette, for defendants-appellees.
Before LABORDE, THIBODEAUX and SAUNDERS, JJ.
SAUNDERS, Judge.
This suit involves a claim for damages resulting from personal injuries sustained by plaintiff, Geneva Deville, in a slip and fall accident at the home of plaintiff's sister and brother-in-law, Robert and Dorothy Burleigh. The Burleighs were insured by State Farm Insurance Company, the remaining defendant in this matter.[1] A jury returned a verdict finding the Burleighs were negligent in creating a hazard which caused the plaintiff's injuries, and awarded damages in the amount of $50,000.00. The jury further allocated fault to the plaintiff at 50% and to the Burleighs at 50%. Judgment was signed accordingly. It is from this judgment that plaintiff appeals. We affirm as amended.

FACTS
On November 1, 1989, plaintiff went to the Burleighs' home. At the time of her arrival, Dorothy Burleigh was hosing the carport to her home, attempting to clean an oil spot on the concrete. According to the testimony of Dorothy Burleigh, she had already hosed down the oil spot and spread it around the carport.
When the plaintiff arrived, Dorothy stopped cleaning the carport and walked the plaintiff into the house through the front door, rather than through the entrance adjacent to the carport. According to the testimony of both Dorothy and the plaintiff, no warnings were given to the plaintiff of the slippery nature of the carport. After a short visit, plaintiff walked out the door which is adjacent to the carport, and suddenly fell to the ground, her feet having slipped from beneath her. The surface of the concrete was so slick that, despite several attempts to get up from the fall, the plaintiff was unable to do so because of the oil surrounding her hands and feet.
The plaintiff suffered injuries to her back. She visited her family physician, Dr. Charles Aswell, on and off for several months complaining of back pain. Dr. Aswell's testimony indicated that he could find no objective sign of injury, except stiffness and spasm. Dr. Aswell referred the plaintiff to a neurosurgeon, Dr. Robert Rivet. Dr. Rivet performed a series of tests, specifically a lumbar myelogram and CAT Scan. His deposition and trial testimony indicated his findings of some evidence of facet arthropathy and some abnormality at the L3-4 and 4-5 discs. However, it was his opinion that she was not a candidate for surgery since there was no indication of nerve impingement. He recommended physical rehabilitation with Dr. Daniel Hodges. Plaintiff did not follow through with the rehabilitation. According *1257 to Dr. Rivet, he refused to continue seeing the plaintiff since she was not going to follow his recommendations.
Additionally, plaintiff was examined by Dr. James Domingue who evaluated her while she was in the hospital preparing for the mentioned diagnostic tests. This examination was done at Dr. Rivet's request. Dr. Domingue's deposition and trial testimony indicated that he agreed with Dr. Rivet's initial diagnosis of chronic lumbar pain and agreed that surgery was not indicated.
After a two day trial, the jury answered the verdict form interrogatories as follows:
"1. Are Robert Burleigh and Dorothy Burleigh strictly liable to Geneva Deville for
 the injuries received in her accident?
 Yes ______ No X 
 2. Were Robert W. Burleigh and Dorothy Burleigh guilty of negligence which
 caused the accident of Geneva Deville?
 Yes X No ______
 3. Was Geneva Deville guilty of negligence in causing her accident?
 Yes X No ______
 4. What percentage of fault do you attribute to the parties?
 Robert and Dorothy Burleigh 50 %
 Geneva Deville 50 %
 100 %
 5. What damages do you award Geneva Deville for the injuries she suffered as a
 result of the accident?
 $50,000.00
Judgment was signed accordingly on May 18, 1992.
Plaintiff assigns the following errors on appeal:
1. The jury erred in failing to apply strict liability in the case in which a homeowner created an oily surface on her home carport and failed to warn a guest of its existence when the oily surface caused the guest to fall and suffer serious injuries.
2. The jury erred in assessing a plaintiff with 50% of fault for falling on an oily surface at the residence of a home owner who created the unreasonably dangerous condition and failed to issue any warnings to plaintiff or to correct the existence of such a condition.
3. The jury erred in finding plaintiff to have sustained only $50,000.00 of special and general damages in light of the evidence concerning her inability to work in the future, her past lost wages, the cost of future medical and the severity of her general damages.

DISCUSSION
We find no merit to Assignment of Error No. 1 regarding strict liability. The jury was properly instructed on the law of strict liability and its application to the facts. Not every imperfection is a "defect" for which delictual responsibility under LSA-C.C. art. 2317 will be imposed. To be a "defect," the imperfection must pose an unreasonable risk of injury to persons exercising ordinary care and prudence. Montgomery v. City of New Orleans, 537 So.2d 1230 (La.App. 4th Cir. *1258 1989) citing Shipp v. City of Alexandria, 395 So.2d 727 (La.1981). To impose Article 2317 liability, the plaintiff bore the burden of proving by a preponderance of the evidence that the oil slick causing her injuries posed an unreasonable risk of harm to persons exercising ordinary care. Our Louisiana Supreme Court has held that the unreasonable risk of harm standard cannot be applied mechanically, but rather serves as a guide for judges in evaluating a certain condition and the risks it imposes. The jury should weigh certain considerations including the gravity of the risk of harm to others, the individual and societal rights and obligations, and the social utility involved. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990).
After a consideration of the principles employed in determining whether the carport presented an "unreasonable" risk of harm, the evidence supports that there was no defect in the design or construction of the concrete which created an unreasonable risk of harm. The presence of a foreign substance does not create a vice or defect inherent in the thing itself. See Mitchell v. Travelers Ins. Co., 464 So.2d 404 (La.App. 1st Cir.1985) and Lewis v. Oubre, 461 So.2d 523 (La.App.3d Cir. 1984), writ denied, 465 So.2d 735 (La.1985). This court concludes that the jury properly weighed the appropriate considerations and was reasonable in its determination that an unreasonable risk of harm did not exist and correctly based liability on negligence rather than Article 2317.
Under the theory of negligence[2] and the duty of homeowners to social guests, the jury properly found liability on the part of the defendants. The duty owed by an owner or occupier of a home to a social guest is to avoid reasonably foreseeable danger to the guest and to keep his premises safe from hidden dangers in the nature of traps or pitfalls. Fontenot v. Bolfa, 549 So.2d 924, 926 (La.App. 3d Cir. 1989). In this case, Dorothy clearly had a duty not to create such a hazardous condition, and to warn the plaintiff of the possibility that the concrete surface was slick due to the hosing of the oil spot. In addition to creating the risk, Dorothy also breached her duty to warn the plaintiff to take precautions as she walked out onto the carport. Consequently, Dorothy's conduct was a cause-in-fact of plaintiff's injuries.
However, we find that the jury erred in its allocation of fault. The testimony clearly indicates that the plaintiff was not forewarned of the condition of the carport. She had not entered the house through the carport entrance and was totally unaware of the oil dispersion on the concrete. In fact, it was Dorothy who led the plaintiff out of the house through the carport door. The sole duty imposed upon this plaintiff is one of a reasonable and prudent person to observe and protect herself from obvious and apparent dangerous conditions. See Siau v. Rapides Parish School Board, 264 So.2d 372 (La.App. 3d Cir.), writ denied, 266 So.2d 440 (La.1972). At most, the plaintiff can only be assessed with knowing the carport had been hosed down earlier and was wet with water. This negligence is slight when compared to the far greater fault of the defendant in causing the danger, failing to warn of the danger, and leading the plaintiff to the slick carport. The evidence is clearly contrary to the jury's finding. Therefore, we reapportion fault to assess 20% to the plaintiff and 80% to the Burleighs.
With regard to the damages awarded, Louisiana law is well settled that an appellate court should not disturb an award unless the record shows that the trial court abused its discretion. We have reviewed the testimony and evidence and find no *1259 abuse of discretion in the award of $50,000.00. A review of the evidence indicates that the injuries were not of a nature requiring surgery. Furthermore, the plaintiff failed to follow her physician's recommendations which would have mitigated her damages. The evidence does not indicate any future physical disability. The testimony with regard to loss wages is vague and inconclusive. We are unable to determine whether some part of the $50,000.00 award is for loss wages. It is clear, however, that this award is within the discretion given to the trier of fact. We find no reason to disturb this award.
Accordingly, we affirm the damage award, but amend the apportionment of fault and allocate 20% to the plaintiff, Geneva Deville, and 80% to the Burleighs. Costs of this appeal are cast to the defendant, State Farm Insurance Company.
AFFIRMED AS AMENDED, AND RENDERED.
NOTES
[1] The Burleighs were dismissed from this suit prior to trial.
[2] To assert a cause of action in negligence, a party must allege five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was the legal cause of the plaintiff's injuries (the scope of duty element); and (5) actual damages (the damages element). Fowler v. Roberts, 556 So.2d 1 (La.1989).