622 So.2d 1178 (1993)
Catherine LIMBERG, et al.
v.
WINN DIXIE LOUISIANA, INC.
No. 92-CA-2150.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 1993.
Thomas J. Eppling, Staines & Eppling, Metairie, for appellant.
Ronna M. Steele, Robert G. Harvey, New Orleans, for appellees.
*1179 Before BARRY, CIACCIO and LOBRANO, JJ.
CIACCIO, Judge.
In this personal injury case, defendant, Winn Dixie Louisiana, Inc., appeals from a trial court judgment finding it 30% at fault in causing plaintiff's injuries. We reverse.
Plaintiff, Catherine Limberg, filed suit against Winn Dixie, alleging that she "fell over a defective exit" while exiting the Winn Dixie Market Place on Morrison Road and injured her left elbow and right ankle. Following a trial on the merits, the trial judge rendered judgment, awarding plaintiff $7,500.00 in general damages, $896.50 for medical expenses and $300.00 for lost wages, subject to her 70% comparative negligence.
The trial judge made the following findings of fact as set forth in his reasons for judgment:
The plaintiff fell at the curb of the Winn-Dixie store on Morrison Road on June 24, 1988, as she was exiting the store. She testified that she was looking straight ahead into the parking lot and talking to her son and not looking down in front of her.
Mr. Gallardo testified that there were two hazards at the location where the plaintiff fellthe slope and the absence of non-skid paint.
The defendant expert Mr. Quick testified that the coefficient of friction at the location exceeded the minimum requirements.
The Court concludes that there was a defect that posed an unreasonable risk of harm at the location on the curb where the plaintiff fell. Accordingly, the Court assigns 30% fault to Winn-Dixie and assigns 70% of the fault to the plaintiff for her failure to look where she was walking.
Winn Dixie argues on appeal that the trial judge erred in finding it liable either under negligence or strict liability.
In a typical negligence case (those based on C.C. art. 2315 and art. 2316), the injured party must prove that the thing which caused the injury was owned by or was in the custody of the defendant, that it created an unreasonable risk of harm or injury (it was defective) that resulted in damage, that the owner or custodian knew or should have known of the risk, and the owner/custodian failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982)
In a strict liability case against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage. Kent v. Gulf States Utilities Co., supra.
The unreasonable risk of harm criterion is not to be applied mechanically. The court must balance the claims and interests, weigh the risks and the gravity of harm, and consider the individual and societal rights and obligations. Landry v. State, 495 So.2d 1284 (La.1986). The court must balance the probability and magnitude of the risk against the utility of the thing. Bell v. State, 553 So.2d 902 (La. App. 4th Cir.1989).
If a pedestrian falls it does not automatically follow that the sidewalk was unreasonably dangerous. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981). A pedestrian has a duty to see that which should be seen. Williams v. Orleans Parish School Board, 541 So.2d 228 (La.App. 4th Cir.1989).
The location, the victim's familiarity with the area, the size and nature of the imperfection, and the victim's use of ordinary care are factors which should be considered. Orleans Parish School Board v. City of New Orleans, 585 So.2d 643 (La. App. 4th Cir.1991), writ denied 589 So.2d 1069 (La.1991).
In the instant case, both the plaintiff and Winn Dixie offered expert testimony *1180 regarding the curb outside the store where plaintiff fell. Wilfred Gallardo, a safety consultant, testified on behalf of plaintiff. Gallardo testified that he examined the site of the plaintiff's fall on April 29, 1989. He stated he made a detailed inspection of the site which included analyzing the surface area of the curb, measuring its slope and determining the type and color of plaint used on the surface. According to Gallardo, based on his inspection he concluded the curb outside the Winn Dixie store created a hazard because there was a ten degree slope coming from the store to the street and as the slope reached the curb there was one and one-half inch where the slope was fifty degrees. He further testified that the slope as it was originally constructed was not a hazard because the concrete's rough surface created a traction, but, after it had been painted with non-skid resistant paint, the rough surface traction was eliminated. Gallardo opined that the slope of the curb combined with the existence of non-skid resistant paint on its surface created the hazard.
Leonard Quick, a civil engineer, testified on behalf of Winn Dixie. He testified that he examined the curb and performed a coefficient of friction analysis on the concrete surface of the curb. He explained that the coefficient of friction statistic indicated the amount of friction on the surface as opposed to its slickness. Quick further explained that the National Bureau of Standards developed the coefficient of friction for walking surfaces, that it was standard and adopted by the Consumer Product Safety Commission, the Federal Trade Commission, and utilized in all building codes. He testified that the recommended minimum coefficient of friction was 0.5 and that based upon his analysis, the average coefficient of friction of the painted curb surface where plaintiff fell was approximately.73, well above the recommended minimum. According to Quick, the absence of skid resistant paint on the curb surface did not pose a hazard to pedestrians because the coefficient of friction was high. He testified that the curb met all building code requirements and that it was painted to warn pedestrians of the slight change in elevation. Quick opined that the curb was not defective in any way and was not a hazard to pedestrians.
At trial plaintiff testified that she knew of the curb's existence, that it was painted bright yellow and that it sloped down to the parking lot. She testified that upon entering the store she walked up the curb. She further testified that when exiting the store she was talking to her son and looking into the parking lot for her car. Plaintiff testified that she did not look down and did not look to see where she was walking. According to her, she stepped on the curb, placing half of her right foot on the curb and the other half extending over it; she lost her balance and fell.
It is well settled that a trial court's findings of fact are entitled to great deference and should not be disturbed unless manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Further, a trial court's finding of the parties' percentages of fault is a factual determination. Such a finding should not be reversed absent manifest error. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991).
After considering the factors in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), we find the lower court was clearly wrong. Plaintiff was able to see the curb and knew of its slope but she was inattentive and distracted by the conversation with her son. She simply failed to see what she should have seen. In light of this and absent any evidence that the curb was cracked, broken, or evidence of a foreign substance on the curb, the trial judge was clearly wrong in finding that there was a defect that posed an unreasonable risk of harm at the location on the curb where the plaintiff fell.
Accordingly, for the reasons stated herein, the judgment of the trial court finding Winn Dixie 30% at fault in causing plaintiff's injury is reversed.
REVERSED.