649 So.2d 465 (1994)
Vergie R. McBRIDE, Plaintiff-Appellant,
v.
CRACKER BARREL STORES, INC., et al., Defendants-Appellees.
No. 94-370.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
*466 Joseph Edwin Windmeyer, Metairie, for Vergie R. McBride.
Robert Leon Ellender, Lafayette, for Cracker Barrel Stores, Inc. et al.
Before THIBODEAUX, COOKS and SAUNDERS, JJ.
THIBODEAUX, Judge.
The plaintiff, Vergie McBride, appeals a judgment pursuant to a unanimous jury verdict rendered in favor of the defendants, Cracker Barrel Stores, Inc. and its insurer, Audubon Insurance Co., seeking a reversal of the trial court's judgment finding that the defendants were not at fault in causing Ms. McBride's injuries as a result of an accident at a car wash under the custody of Cracker Barrel.
For the following reasons, we affirm the judgment of the trial court.

ISSUES
Was the jury manifestly erroneous in failing to find the defendant, Cracker Barrel Stores, Inc., at fault in causing Ms. McBride's bodily injury and automobile damage is the issue in this case.

FACTS
The facts of this case are disputed. This summary is supplemented by the highlighted testimony of many of the witnesses which is summarized in the Law and Discussion section of this opinion. Ms. McBride claims that on December 28, 1989, she, along with her two children, ages 12 and 4, drove her 1990, Mazda 626 automobile into the mechanized car wash at the Cracker Barrel convenience store located on North Lewis Street in New Iberia, Louisiana, to wash her car. She further claims that during the washing process, her automobile was shaken violently by the car wash. Ms. McBride stated that she felt something heavy fall on the roof of her car and that there was a crushing sound that occurred as the roof started to cave in.
She testified that she and her two children were screaming and crying as they got on the floor of the car. At the trial, Dustin McBride, Ms. McBride's 12 year-old son, testified that he saw a rectangular piece of metal come toward the car as the part that washes the hood and roof of the car began to go over the car. He further testified that the brush bristles looked very low and the brushes began washing the car roughly. Dustin stated further that after the shaking stopped, the part that washes the roof and hood of the car proceeded to crush the top of the car.
After the incident was over, Ms. McBride drove the car out of the car wash and into the street, and returned to the Cracker Barrel store to report the incident to a store employee. Dustin testified that he heard the *467 lady in the store tell his mother that the car wash had just reopened after being closed for two weeks.
The New Iberia Police Department was contacted and the Department sent Officer John C. Boutte to investigate. Officer Boutte testified that a report was made for insurance purposes because of the property damage which he observed himself. Officer Boutte also stated that Ms. McBride did not report any pain. Both Ms. McBride and Dustin testified that the entire family was just getting over the flu and that any pain they may have felt that day was attributed to their recent illness.

LAW AND DISCUSSION

Cracker Barrel's Strict Liability
The thrust of Ms. McBride's argument on appeal is that the jury committed manifest error in failing to find that the car wash was defective and thereby failing to impose liability on Cracker Barrel based on the theory of strict liability where Cracker Barrel failed to show that her harm was caused by (1) her own fault; (2) the fault of a third person; or (3) an irresistible force. Cracker Barrel essentially argues that the car wash was not defective in that it did not create an unreasonable risk of harm.
A plaintiff who attempts to impose liability under La.Civ.Code art. 2317 on the custodian of a defective thing must prove that: (1) the thing had a vice or defect; (2) the defect presented an unreasonable risk of harm to others; (3) the thing was in the defendant's custody; and, (4) damage was caused by the defect. Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992); Francis v. American Well Service & Drilling, Inc., 617 So.2d 1329 (La.App. 3d Cir.1993). A plaintiff's failure to prove any one of these facts is fatal to a 2317 claim.
A defect is some flaw or fault or condition of relative permanence existing or inherent in the thing itself as one of its qualities. Crane v. Exxon Corp., U.S.A., 613 So.2d 214 (La.App. 1st Cir.1992), writ granted in part on other grounds, writ denied in part and remanded, 620 So.2d 858 (1993); Boudreaux v. Farmer, 604 So.2d 641, 652 n. 10 (La.App. 1st Cir.), writ denied, 605 So.2d 1373 and 605 So.2d 1374 (1992). In addition, the flaw, fault or condition of the thing must pose an unreasonable risk of harm. Bealer v. National Tea Co., 597 So.2d 1242 (La.App. 3d Cir.1992).
In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Under either theory of liability, the court must decide if the risk which causes injury is within the ambit of protection of the duty. Boudreaux, supra. The unreasonable risk of harm criterion is not to be applied mechanically, but rather serves as a guide for judges and juries in evaluating a certain condition and the risks it imposes. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990); Deville v. State Farm Ins. Co., 617 So.2d 1255 (La.App. 3d Cir.1993). The court and/or the jury has a duty to balance the claims and interests of the parties, weigh the risks and the gravity of the harm, and consider as well the individual and societal rights and obligations. Sistler, supra; Limberg v. Winn Dixie Louisiana, Inc., 622 So.2d 1178 (La.App. 4th Cir.1993). Therefore, a custodian will not be held responsible for every injury resulting from any risk, but only those injuries caused by unreasonable risks of harm to others. Rogers v. Parish of East Baton Rouge, 577 So.2d 1068 (La.App. 1st Cir.), writ denied, 580 So.2d 925 (1991).
This court recently held that not every minor imperfection or irregularity in a thing is a "defect" giving rise to delictual responsibility under La.Civ.Code art. 2317. The imperfection or irregularity must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Bealer, 597 So.2d at 1244 and Deville, 617 So.2d at 1257. Thus, although the theory of strict liability dispenses with the plaintiff's necessity of proving the defendant's knowledge of the defect, the burden of proof still remains upon the plaintiff to prove that there was in fact a defect in the thing which caused *468 the accident. Schexnider v. Winn Dixie Louisiana, Inc., 490 So.2d 1095 (La.App. 3d Cir.), writ denied, 491 So.2d 381 (1986).
Ms. McBride's theory of a defect is based on her allegation that the brush crushing the top of her car was an unusual occurrence. However, an unusual occurrence in and of itself is not proof of a defect. Furthermore, it does not automatically follow that the car wash was unreasonably dangerous because its mechanism allegedly dented the top of her car. See, Canty v. Terrebonne Parish Police Jury, 397 So.2d 1370 (La.App. 1st Cir.), writ denied, 401 So.2d 988 (1981).
Only Cracker Barrel offered expert testimony regarding the car wash. Terry Hammes, a service technician with Ryko Manufacturing which has a maintenance contract with Cracker Barrel, testified that he has been employed for a little over three years with Ryko and that his job duties include the installation and maintenance of car washes. Additionally, Hammes is a "troubleshooter" for car washes which means that if there is a problem with a car wash, he is called to determine the specific problem.
Hammes further testified about his training at Ryko. He testified that for four months, he was taken through the factory from station to station and learned how the car washes are built. Next he attended a solid state school as well as a relay logic school. Hammes also attended update seminars every year. In addition to the training Hammes received at Ryko, he also received a college degree in robotics and automation. Hammes services between 80 and 100 car washes in the area.
After hearing Ms. McBride's testimony as to how the car wash damaged her car, Hammes testified that he could give no explanation as to how it was possible for the car wash to malfunction as claimed by Ms. McBride and her son. He stated that the physical make-up of the car wash renders it impossible for the machine to have caused the damage to the car as she alleged. Hammes explained that air pressure holds the top brush up and there is nothing that pushes the brush down. The cylinder of the brush weighs approximately 35 pounds and has a counterbalance. The counterbalance takes the weight off of the brush which allows it to drop down slowly. Also, the cylinder which holds the top brush is 6 inches in diameter from end to end and it is not bigger in the middle. Therefore, Hammes testified, he did not know how the cylinder could have caused more of a dent in the middle of the roof of the car. The photos of Ms. McBride's car reveal that the roof of her car was dented more in the middle as opposed to being dented evenly across the roof.
Mike Butcher, who does maintenance for Cracker Barrel in the district where the North Lewis Street car wash is located, and John Smart, an electrician employed by Energy Equipment who also takes care of the car washes, also testified for Cracker Barrel as to the mechanical aspects of the car wash that is the subject of this appeal. The testimony of Butcher and Smart who, like Hammes, have worked on the North Lewis Street car wash, revealed that there is no way, mechanically, that the car wash could have operated in the manner alleged by Ms. McBride. Their testimony was essentially the same as that of Hammes. Additionally, if the top brush malfunctions, it is usually due to a broken chain or cable which would cause damage to the windows, the back of the car, as well as the roof.
Smart also discussed the counterweight attached to the brush. He stated that the counterweight, a rectangular piece of metal, did not hold the brush up but if the counterweight was not attached to the brush, the brush would be too heavy when it came down. Although Ms. McBride's son, Dustin, testified that he saw a rectangular piece of metal come toward the car prior to the brush hitting the roof, Smart testified that the counterweight could not cause damage to the car because when the brush goes down, the weight goes up.
Ms. McBride has presented no evidence that the car wash or its brush was defective in any way. There were no witnesses to the car wash incident other than Ms. McBride and her two children. She relied in part, and the jury was instructed, on the theory of res ipsa loquitur. According to Ms. McBride, her roof was not damaged before her car *469 entered the car wash, but was damaged when she exited.
The jury apparently took the view of the defendants and determined that the car wash was not defective. In this case, the jury was required to make credibility determinations. It is well settled that a trial court's or jury's findings of fact are entitled to great deference and should not be disturbed unless those findings are manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Also, where there is conflict in the testimony, evaluations of credibility and inferences of fact that are reasonable should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Moreover, where there is evidence before the trier of fact which, upon its reasonable evaluation as to credibility, furnishes a reasonable basis for the finding, it should not be disturbed in the absence of manifest error, i.e., unless clearly wrong. Rosell, supra.
There was ample evidence in the record tending to show that the car wash did not possess a vice or defect that posed an unreasonable risk of harm to others. Given the disclosures in the record, we are not persuaded to disturb the judgment as one founded upon manifest error or clear wrongness. Because we find that the jury did not commit manifest error in failing to find Cracker Barrel at fault, it is unnecessary to address Ms. McBride's second assignment of error regarding compensation for damages suffered.
Accordingly, for the reasons assigned, the judgment of the trial court exculpating Cracker Barrel and its insurer from liability is affirmed. Costs of this appeal are to be taxed to plaintiff-appellant, Vergie McBride.
AFFIRMED.