DECUIR, Judge.
This is a trip and fall case. Plaintiff, Kevin Hamilton, a security guard at the Willamette Industries’ wood chip plant, alleges that, as he was walking across a Kansas City Southern Railway line on his job site, his foot became lodged in a washed-out area next to the track, causing him to fall and injure himself. He filed suit against Kansas City Southern Railway Company to recover damages associated with his injuries. The trial court granted judgment in favor of the defendant. Hamilton appealed to this court. For the reasons that follow, we affirm.
FACTS
Kevin Hamilton was a security guard for Burns Security Company, hired to perform security services at the Willamette Industries’ wood chip plant in rural Natchitoches Parish, Louisiana. On November 20, 1994, he alleges that he tripped in a washed-out area adjacent to a private railroad crossing of the Kansas City Southern Railroad, which caused him to fall and sustain serious injuries. At the time of the|2alleged accident, he had been with the company approximately *360 one year and admitted to having discipline problems.
There were no witnesses to the alleged accident. However, Hamilton testified that he arrived at work at 5:00 A.M. on November 20, 1994. At 5:30 A.M. he left the guardhouse to go to the restroom. In order to reach the restroom, he was required to utilize the CLECO crossing (also referred to as the Brass Alley crossing), a private crossing of the Kansas City Southern Railroad. As a function of his job, he made the same crossing numerous times during each shift and had done so for nearly a year. Nevertheless, in spite of his admitted knowledge of the condition of the track, Hamilton allegedly tripped and fell on the track, injuring himself.
On the day of the accident, Hamilton went to the emergency room and was x-rayed, given Tylenol and released. He did not seek medical treatment again until December 13, 1994. He alleges injuries to his shoulder and back and had alleged the same injuries as a result of a prior work injury in 1993 and an auto accident in August of 1994. In addition, he alleges the same injuries as a result of an auto accident which occurred after the incident in this case. These injuries have necessitated injections and physical therapy. Hamilton never returned to work or filed an accident report with his employer.
Beverly Sauce, a coworker, testified that she spoke to Hamilton after the accident and observed no evidence of a fall on his light-colored clothing. Moreover, she testified that she observed Hamilton picking up his car two days later and sometime later playing basketball. The defendant exhibited no evidence of injury in either case.
Several witnesses testified that the track was in substantially the same condition for years and that it had never caused a problem in spite of heavy foot traffic from security personnel and contractors who crossed the track on the way to the gate where IsHamilton worked. An employee of the railroad testified that the track was inspected twice a week and that it was found to be adequate for its purpose in that there was no danger of derailment. He noted that in spite of the fact that the crossing was secondary and not at the main entrance to the plant, that on several occasions the railroad had added fill to the low spots near the track. He indicated that the depressions returned due to the normal vibrations of passing trains and had not worsened over time.
After specifically noting that he need not determine whether Hamilton’s accident was in fact a “phantom accident,” the trial court found for the defendant, indicating that Hamilton was 100% at fault in causing his injuries. Hamilton lodged this appeal.
DISCUSSION
Hamilton alleges that the trial court erred in failing to apply principles of comparative negligence in this case and in failing to recognize that a reasonable man may be momentarily forgetful. The defendant argues that comparative negligence principles are only applicable where the defendant has been found to be negligent.
A plaintiff who attempts to impose statutory liability on the custodian of a defective thing must prove that: 1) the thing has a vice or defect; 2) the defect presented an unreasonable risk of harm to others; 3) the thing was in defendant’s custody; and 4) damage was caused by the defect; failure to prove any one element is fatal to a statutory claim. McBride v. Cracker Barrel Stores, Inc., 94-370 (La.App. 3 Cir. 11/2/94), 649 So.2d 465.
In both negligence and strict liability cases, the court or jury must balance the probability and magnitude of the risk against the utility of the thing in determining whether there is an unreasonable risk of harm. Id. The court or jury has a duty to balance the claims and interests of the parties, weigh the risks and gravity of the harm, and consider as well the individual and societal rights and obligations. Id. “Therefore, a custodian will not be held responsible for every injury resulting from any risk, but |4only those injuries caused by unreasonable risks of harm to others.” McBride, 649 So.2d 465, 467.
Not every minor imperfection or irregularity in a thing is a “defect” giving rise to delictual responsibility. Id. The im *361 perfection or irregularity must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Deville v. State Farm Ins. Co., 617 So.2d 1255 (La.App. 3 Cir.1998). Moreover, property owners by law are only under a duty to keep their premises in a safe condition for use in a manner consistent with the purpose for which the premises are intended. Kerry v. Basco, 96-289 (La.App. 3 Cir. 10/9/96), 687 So.2d 420.
In the case before us the trial court found that Hamilton was aware of the condition of the track and had been so for nearly a year. Under those circumstances, the court found that he was 100% at fault in causing his injuries. Two cases with similar factual scenarios support the trial court’s conclusion.
In Phipps v. Amtrak, 94-1876 (La.App. 1 Cir. 11/20/95), 666 So.2d 341, writ denied, 95-3012 (La.2/28/96), 668 So.2d 368, the court dismissed a train passenger’s action against a railway company, after finding that the “defect” alleged by the plaintiff did not impose an unreasonable risk of harm. There, the plaintiff was injured when she tripped over the recessed center aisle of a glass-domed observation car. She claimed that the recessed aisle, which was thirteen inches lower than the floor on which the seats were fastened, presented an unreasonable risk of harm. The trial court agreed. In reversing the judgment of the trial court, our brethren on the first circuit wrote:
The record indicates that Phipps was clearly aware of the design of the observation car and that crossing from one side of the car to the other required a step across the recessed aisle down which she had walked to reach the middle of the car. Any danger involved in negotiating the step across the aisle was patently obvious and easily avoidable. This finding is supported by the fact that Phipps crossed the aisle with no problem at least three times within the hour before the 15accident. Had Phipps been seated on one side of the car for over an hour without moving, it may have been reasonable that she forgot the existence of the recessed aisle as she attempted to move, for the first time, from one side of the train to the other. However, in light of the fact that Phipps successfully crossed the aisle multiple times within a short time span before the accident, we find that a reasonable person, exercising ordinary care, would not have forgotten in such a short time that a step across the recessed aisle was necessary to get from one side of the train to the other.
Id. at 344.
In Champagne v. Missouri Pacific Railroad Co., 209 So.2d 114 (La.App. 3 Cir.), writ refused, 252 La. 459, 211 So.2d 327 (1968), this court addressed a factual scenario almost identical to the case before us. In Champagne, the plaintiff tripped on a railroad spur track that ran through a shopping center parking lot. Her foot caught on a raised portion of asphalt, causing her to trip and injure herself. The trial court found for the plaintiff. In reversing the trial court judgment this court wrote:
The railroad track, as well as the asphalt area around it, was not concealed from the plaintiff. Her testimony was clear that she knew she was crossing a railroad track and that the raised asphalt was obvious to her from a standing position. The photographs filed in evidence showing the area where the accident happened bear out this testimony. The area cannot be considered a trap or an unsafe condition for pedestrians who use ordinary care. However, should the court conclude that an unsafe condition existed, the evidence shows that the condition is obvious to a reasonably alert, observant person and is not a ‘trap.’ If we say that the raised asphalt constituted a hazard, it is still one that the plaintiff admits that she did observe and under our jurisprudence should have avoided. The photographs filed in evidence clearly point out that this was not a hazard in the nature of a trap which would not alert the eye of a pedestrian using ordinary care. From the plaintiff’s own testimony we must therefore conclude that the plaintiff observed the very condition she alleges to have caused her injury, and in the opinion of this court was negligent in failing to exercise a greater degree of care in crossing the railroad track.
Id. at 116.
These cases support our view that there is no error in the trial court’s finding that *362 Hamilton was 100% at fault in causing his injuries. The railroad track, as well as the depressions adjacent to it, were not concealed from Hamilton. His testimony is clear that he knew of the depressions, they were obvious, and that he crossed the track |6numerous times each shift for nearly a year. The photographs filed into evidence showing the depressions at issue bear out this testimony. The evidence also indicates that the track was successfully negotiated by pedestrians on a daily basis for twenty years. Any danger involved in crossing the track was patently obvious and easily avoidable. Had Hamilton not negotiated this crossing several times a shift for nearly a year, it may have been reasonable that he forgot about the existence of the depressions. Since this is not the case, we find that a reasonable person, exercising ordinary care, would not have forgotten the depressions near a track he crossed several times a day.
We also note in our assessment of the unreasonable risk of harm criterion that the railroad track has utility. On the other side of the balance we note that the depression near the track posed a minor risk to pedestrians. After careful consideration of all circumstances surrounding Hamilton’s alleged accident, we find that the likelihood and magnitude of the harm posed by the condition of the crossing was small in light of the social utility of the railroad track, combined with Hamilton’s knowledge of the area. Considering the obvious nature of any danger posed by the track, it can hardly be said that this condition created an unreasonable risk of harm. Accordingly, we find no error in the trial court’s judgment.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to appellant, Kevin Hamilton.
AFFIRMED.
WOODARD, J., concurs in the results.