I, WOODARD, Judge.
Industrial Crane Rental, Inc. (ICR) appeals a trial court’s decision, finding it liable for Mr. Richard Winn’s injuries, which occurred when an ICR crane “headache ball” hit his head, allegedly, as a result of a mechanical defect. The trial court awarded Mr. Winn special and general damages. ICR appeals. The central issue is whether the trial court erred when it found that Mr. Winn established the existence of a crane defect. To prove the existence of a defect requires satisfying the preponderance of the evidence standard. Accordingly, we find that the trial court did not commit manifest error and affirm.
[[Image here]]
Mr. Richard Winn sustained injuries while in the course and scope of his employment with Petrocon Plant Services (Petrocon). Petrocon rented a crane from ICR. Mr. Winn described it as a “15 ton ... real low profile type crane [used] to get inside buildings.” He explained that Petrocon rented such cranes to lift gratings, build platforms, and place them inside buildings regarding its Boise Cascade Sawmill contract in Florien, Louisiana. On the day of his accident, he noticed that the crane did not function properly and reported the matter to his job secretary and superintendent (the superintendent). The superintendent telephoned ICR to have them remedy the crane’s apparent mechanical problem, and Mr. Winn went back to his welding and fitting duties.
Mr. Jimmy Dean Gibson, a Petrocon crane operator, worked in coordination with Mr. Winn and operated the allegedly defective crane at the time of the accident. He described the accident as follows:
We were putting grating on a platform that they had fabricated. Once [Mr. Winn] got it laid in place, he cut it loose and flagged me to swing it. The boom was up in top [sic] of the shed that we were working under. And when I swung it over, it took off. Well, whenever you get out of the swing, it’ll travel *823 another eight or ten feet and then hit, it would hit and then bounce back. The ball come [sic] back and hit him in the back of the head and knocked him cold.
|2The shock knocked Mr. Winn unconscious and lacerated his head. He was immediately transported to the Many Medical Center. From this accident, he suffered dizzy spells, incurred medical expenses, and a loss of wages. He filed the present suit to recover for the personal injury that he suffered in the accident, which he claimed resulted from ICR’s defective crane operation. After a hearing on October 19, 1999, the trial court awarded him $1,850.60 in special damages and $7,500.00 in general damages. It further awarded LWCC $4,154.40 against ICR and Mr. Winn. ICR appeals.
Procedural Considerations
At the outset, we feel compelled to clarify this case’s procedural background, even though it does not relate to any pertinent issue before us. Mr. Winn filed the instant litigation on November 12, 1996, naming ICR and Mr. Anthony Crane, the crane manufacturer, as Defendants. Surprisingly, Anthony Crane Rental, Inc. (ACR) responded to Mr. Winn’s petition, filing a third-party demand, exceptions, and an answer. In its exceptions of improper service of process, lack of service of process, and lack of subject matter jurisdiction, ACR asserted that ICR did not exist as a legal entity.
Generally, ACR’s answer denied Mr. Winn’s allegations and raised affirmative defenses based on its allegations of the victim and third-party fault. Further, ACR filed a third-party demand against Petrocon, insisting that it had a contractual obligation to provide it with insurance to cover such claims as Mr. Winn’s. ACR named “Petrocon Incorporated” as the proper Defendant, but its petition’s service information requested service on “Petro-con Plant Services, Inc.” Additionally, it addressed discovery requests to Petrocon Plant Services, Inc.
Obscuring deeper the issue regarding the proper parties, neither Petrocon Incorporated, nor Petrocon Plant Services, Inc., but rather Petrocon, Inc., answered the third-party demand. Moreover, the Louisiana Workers’ Compensation Corporation (LWCC) filed a petition in intervention for reimbursement of the workers’ compensation benefits it paid to Mr. Winn, naming him and ACR as Defendants in intervention.
|aNext ACR’s original counsel withdrew from representation and was replaced by Petrocon, Inc’s counsel. However, in his motion to withdraw, the attorney stated that he was withdrawing as counsel for Industrial Crane Rental, Inc., instead of for Anthony Crane Rental, Inc. From this point until trial, the pleadings addressed pretrial matters and referred to Mr. Winn, Industrial Crane Rental, Inc., Anthony Crane Rental, Inc., and Petrocon, Inc., but in a totally inconsistent manner.
During trial, the only evidence adduced pertained to Industrial Crane Rental, Inc., and at the trial’s conclusion, the trial court allowed additional time for briefs submission. Ultimately, without oral or written reasons, the trial court entered a judgment in Mr. Winn’s favor, against Industrial Crane Rental, Inc. and Anthony Crane (not Anthony Crane Rental, Inc.), and in favor of LWCC and against Industrial Crane Rental, Inc. and Mr. Winn.
Finally, the trial court’s written judgment, also, exhibits formal defects as the litigants did not approve its form, and it bore the “JUDGMENT ON INTERVENTION” title.
On December 17, 1999, Industrial Crane Rental, Inc. filed a motion for a suspensive appeal, which the trial court eventually granted on December 27, 1999. While the appellate motion does not refer to Anthony Crane, the appeal bond posted as security names both Industrial Crane Rental, Inc. and Anthony Crane to be the applicants. However, the notice of appeal which the clerk of court issued lists only Industrial Crane Rental, Inc. as the Appellant.
*824 We found no satisfactory explanation regarding the issue of the proper party Defendants. However, since none of the parties have objected to their current status, for the purpose of this appeal, we find this litigation to be between Mr. Winn and Industrial Crane Rental, Inc. Additionally, we refer to Mr. Winn’s employer at the time of the accident as Petrocon, which also is the subject of the instant third-party demand.
Proof of Liability
The only relevant issue which ICR asks us to address is whether the trial court erred when it found ICR to be liable for renting a defective crane. ICR insists that Mr. |4Winn did not introduce any evidence of any defect predating the crane’s delivery to Petrocon.
Relevant to the case sub judice, La.Civ.Code art. 2317 provides, in part: “We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.” To establish strict liability under La.Civ.Code art. 2317, Mr. Winn had the burden of proving that (1) the crane had a vice or defect; (2) the defect presented an unreasonable risk of harm; (3) ICR had custody over the crane; (4) the crane’s defect caused his injuries.[1] The trial court must analyze whether Mr. Winn carried his burden of proof under the preponderance of the evidence standard.[2] This standard requires that, taken as a whole, the record shows that the fact to be proven is more probable than not.[3] The mere fact that an accident occurred does not establish a presumption of a defect.[4] We have defined a defect as a flaw, fault, or condition of relative permanence that exists, or is inherent, in the thing itself as one of its qualities.[5]
In the instant case, Mr. Winn testified to having general knowledge regarding cranes and claimed to be familiar with the specific crane sub judice. He related that the crane did not work properly, because:
[T]he swing, when the operator swings it over — meaning the boom to move left to right — it should move, like glide, then come to a stop when he lets [sic] go. This one just keeps traveling and when it stops, it jerks and makes the ball swing.
Although he did not specifically state that the crane at issue lacked such a part, he defined a necessary and important crane’s part, “schwims” or “shims,” as being “[t]hin | ¿pieces of metal which are used to, if something didn’t line up exactly even, like washers, spacers. They make 'em real thin. You can put however many you need to shim something in.” He remembers the accident to have occurred as follows:
I was working in the fab shop which is located to the back of the sawmill. I was putting grating Onto a platform that we was [sic] tabbing up. And I was unhooking the choker which picked up the grating. And once I unhooked it, Mr. Gibson swung the, went to swing the boom around which would be to the right of me and for, my knowledge is, it swung back and hit me in the head. That’s the last I remember. Knocking me out and cutting my head.
Corroborating and expounding upon Mr. Winn’s testimony, Mr. Gibson asserted that being a crane operator and having general knowledge of crane operations and the instant crane in particular, he noticed *825 that the crane malfunctioned. He explained that the accident occurred as the crane’s:
[B]oom was up in top [sic] of the shed where we were working under. And when I swung it over, it took off. Well, whenever you get out of the swing, it’ll travel another eight or ten feet and then hit, it would hit and then bounce back. The ball come [sic] back and hit him in the back of the head and knocked him cold.
He further stated that the crane malfunctioned because of the following:
[There was not] supposed to be any play in that boom when you swing it. When you — it’s like telling it to swing when you move that lever, it swings, and when you back off of it, telling it to stop. It’s hydraulic flow. And it was a malfunction in the swing motor ... the hydraulic motor that swings that boom around.
(Emphasis added.) He asserted that he first noticed that the crane was moving beyond where it was supposed to stop when it arrived on the job and that the defect was temporarily fixed with an aluminum can.
We agree with the trial court that Mr. Winn’s and Gibson’s testimonies clearly establish the existence of a crane defect and shifted to ICR the burden of proving that the crane did not present any defect. However, the record is devoid of ICR’s attempt [ ¿to present contradicting witnesses or evidence. Accordingly, we find no manifest error in the trial court’s decision and affirm.
We are unimpressed with ICR’s argument that Mr. Winn fell short of proving the crane’s defect because he did not introduce any expert evidence. Neither our civil code, nor our jurisprudence requires that a defect be only established with supporting expert evidence. Further, it is well established that trial courts have vast discretion in the receipt of evidence.[6] Although Mr. Winn and Mr. Gibson, acknowledged that they are not experts in cranes in a technical sense of the word, they undisputably possessed a significant “hands on” experience with cranes, in general, as well as this specific crane sub judice. Finally, to require that a plaintiff in Mr. Winn’s position may meet his burden of proof only by presenting expert testimony, would, as a matter of policy, significantly and undesirably increase litigation costs and prejudice plaintiffs who cannot afford the fees. Additionally, expert testimonies’ primary purpose pertain to assisting a fact finder in understanding that which would otherwise be difficult to comprehend. In the instant case, the trial court was satisfied with Mr. Winn’s and Mr. Gibson’s explanations regarding the existence of the crane’s defective operation based upon their first hand working knowledge of the machinery. Apparently, the court did not feel that Mr. Winn’s prima facie case required expert testimony. We find no abuse of discretion in the trial court’s decision and affirm.
Damages
Next, ICR alleges that the trial court erred when awarding Mr. Winn $1,850.60 in special damages. ICR asserts that Mr. Winn only proved entitlement to $1,512.00 due to loss wages.
Special damages are those which can be established with reasonable mathematical certainty.[7] When reviewing a special damages award, the trial court has a narrower and more limited discretion than when assessing general damages.[8] A [7plaintiff seeking to recover special damages must produce some evidence showing *826 the measure of the claimed loss.[9]
After considering the evidence in the record, we disagree with ICR’s calculation of special damages. During trial, Mr. Winn testified that he worked eighty-four hours per week while on the Petrocon job. He stated that he earned $16.00 per hour and $24.00 for hours in excess of forty for a week. He asserted that he lost five days of work as a result of his injury. Petrocon apparently payed him a $40.00 per diem for working away from his home. He recovered none of these wages through workers’ compensation. The total amount of special damages may be detailed as follow:
40 Hours x $16.00 = $640.00
44 Hours x $24.00 = $1066.00
5 days x $40.00 = $200.00
Total: $1,896.00
Hence, the trial court awarded Mr. Winn an amount slightly inferior to the total amount to which he could have, otherwise, been entitled. However, since Mr. Winn does not appeal the trial court’s decision, we leave the trial court’s damage award undisturbed.
CONCLUSION
The trial court had a reasonable factual basis to support its decision that Mr. Winn established the existence of a crane defect. Additionally, the trial court’s special damages computation does not reveal any reversible error. Accordingly, we affirm in all respects and cast ICR with all costs of the appeal.
AFFIR1MED.
PETERS, J., dissents and assigns written reasons.
AMY, J., dissents.

. McBride v. Cracker Barrel Stores Inc., 94-370 (La.App. 3 Cir. 11/2/94); 649 So.2d 465; Prudhomme v. City of Iowa, 99-1386 (La.App. 3 Cir. 2/9/00); 758 So.2d 275.

. Gordon v. State Farm Ins. Co., 97-270 (La.App. 5 Cir. 9/30/97); 700 So.2d 1117.

. East v. Crying Eagle Const., 95-560 (La.App. 3 Cir. 11/22/95); 664 So.2d 746.

. Prudhomme, 758 So.2d 275.

. McBride, 649 So.2d 465.

. State v. Simien, 95-1407 (La.App. 3 Cir. 7/24/96); 677 So.2d 1138.

. Jimmerson v. Rearden, 98-1120 (La.App. 3 Cir. 3/3/99); 736 So.2d 916.

. Garza v. Fontenot, 97-125 (La.App. 3 Cir. 6/4/97); 696 So.2d 194.

. Id.