hMURRAY, Judge.
This appeal from the First City Court involves a seldom utilized doctrine asserted in a unique factual situation. The issue before us is whether the “abuse of rights” doctrine is applicable to a situation in which a landlord is allegedly being used as the instrument of another who seeks to deny a tenant’s due process rights.
BACKGROUND:
The facts are fairly simple and, for the most part, undisputed. Sometime in the 1970s Salvadore Pappalardo and Fred Casey entered into an agreement whereby Mr. Casey would operate K.C. Landfill (K.C.) on Mr. Pappalardo’s property in New Orleans East (a strip of land approximately 150 feet by 2367 feet running from Old Gentilly Highway almost to the Industrial Canal, crossing Almonaster Boulevard). The gentlemen exe *542 cuted a lease, believed to have been for a period of 20 years, providing for a $1.00 annual rental. Although no copy of the lease remains in existence, the parties agree that it expired in 1992. The land was in a low area. Mr. Pappalardo would benefit by his property being filled, and Mr. Casey would have a site for his landfill business.
With the passage of time, landfills began to be regulated. Mr. Casey apparently cooperated with the governmental entities regulating his landfill operation. In 1986 he |2received approval from the Department of Environmental Quality (DEQ) of an Operational Plan for K.C., authorizing it to operate as a construction and debris landfill. He also obtained a permit from the City of New Orleans to operate a construction and demolition debris landfill. When the legislature established a state permitting process in 1993, he followed the procedures applicable to existing landfills.
Following Mr. Salvadore Pappalardo’s death[1] Mr. Joseph Pappalardo, his son, advised Mr. Casey that the family wanted him to continue to fill the land. The arrangement continued until the fall of 1994 when Mr. Joseph Pappalardo and the other owners of the land on which the landfill is located began eviction proceedings. Mr. Casey answered the Rule for Possession, and asserted the “abuse of rights” doctrine as an affirmative defense.
THE ABUSE OF RIGHTS DOCTRINE:
Although the Louisiana Supreme Court employed a similar analysis in earlier decisions, the abuse of rights doctrine was recognized expressly in Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La. 1976). As the Court has noted, the abuse of rights doctrine, a product of a French jurisprudential and doctrinal movement, has become a widely accepted principle of the Civil Law. Illinois Cent. Gulf R. Co. v. International Harvester, 368 So.2d 1009, 1014 (La. 1979). The Court also noted that the doctrine was in the state of flux, and reviewed the law regarding its application. It concluded that the holder of an individual right in a civil law jurisdiction may not exercise that right to the detriment of others, simply for the sake of exercising it. Consequently, one who wishes to exercise the right must show some “serious and legitimate” interest in order to justify the exercise of his right.
The Court determined that the main criteria for applying the doctrine were:
(1) a right is being used exclusively to harm another, or the predominant motive for exercising a right is to cause harm;
(2) the intent to harm is not proven, but there is no serious and legitimate interest in the exercise of a right;
|3(3) the exercise of a right is against moral rules, good faith or elementary fairness; or
(4) a right is exercised for a purpose other than that for which it was granted.
Id. at 1014.
The doctrine has been invoked in cases involving a landlord’s exercise of his rights against his tenant. Illinois Cent. Gulf R. Co., supra; Housing Authority of City of Abbeville v. Hebert, 387 So.2d 693 (La.App. 3rd Cir.1980), writ refused, 394 So.2d 275 (1980); Real Estate Sendees, Inc. v. Barnes, 451 So.2d 1229 (La.App. 4th Cir.1984); Mascaro v. Hudson, 496 So.2d 428 (La.App. 4th Cir.1986); Truschinger v. Pak, 513 So.2d 1151 (La.1987). However, in each of these cases the court found that the tenant had failed to prove that there was an abuse of rights by the landlord.
In this ease the tenant, Mr. Casey, acknowledges that there is no ill feeling between the landlord and him. However, he asserts that the landlord has been made the reluctant agent of DEQ, which is exerting pressure to close K.C. Landfill, in derogation of his due process rights. Mr. Casey contends that the landlord has no serious and legitimate interest in evicting him, that the eviction is a direct result of the DEQ’s action, and would not have happened but for the pressure exerted by DEQ. The effect of the landlord’s exercise of the right to evict the *543 tenant under these circumstances is to deprive Mr. Casey of an administrative hearing on the DEQ Compliance Order and Penalty Notice ordering him to close the landfill for alleged violations.
Relevant to this argument is the following chronology:
DATE EVENT
6/19/92 DEQ issues Compliance Order to K.C. for violation allegedly occurring on 4/21/92
7/7/92 Mr. Casey requests administrative hearing on Compliance Order
4/27/93 DEQ issues Penalty Notice to K.C. for the alleged 4/21/92 violation prior to hearing
5/20/93 Mr. Casey requests administrative hearing on Penalty Notice
1/10/94 DEQ issues Compliance Order to Mr. Pappa-lardo for violation allegedly occurring on 11/30/93
141/14/94 Letter from Mr. Pappalardo to Mr. Casey giving until 2/15/94 to close landfill
3/16/94 DEQ issues Compliance Order to K.C. for same violation allegedly occurring on 11/30/93 that was subject of the Compliance Order to Mr. Pappalardo on 1/10/94
7/20/94 Status conference between DEQ and Mr. Pap-palardo
9/16/94 Property owners begin eviction proceedings against Mr. Casey
The timing of the events leading up to the eviction proceedings is certainly suspect, as is the fact that the only time Mr. Pappalardo was served with a Compliance Order was after Mr. Casey had requested an administration hearing on the Penalty Notice issued by DEQ, thereby delaying enforcement of its order to close the landfill. We will assume arguendo that DEQ’s action against Mr. Pap-palardo was initiated in order to circumvent Mr. Casey’s due process right. The Court must determine if such an attempt falls within the “abuse of rights” doctrine so as to restrict the property owner’s right to demand the return of his property at the expiration of the lease.
The parties agree that there is no animosity between them and that the property owners do not wish to harm Mr. Casey. The parties also agree that service of the DEQ Notice of Compliance on Mr. Casey was the event that triggered the institution of eviction proceedings. They also seem to agree that the property owners expressed dissatisfaction with the arrangement and discussed modifying or ending it before the Compliance Order was issued to Mr. Pappalardo.
We are faced with competing interests in this case: the right of the property owners to the return of their property, and the right of Mr. Casey to due process. We must determine if the property owners have shown a serious and legitimate interest to justify the exercise of their right.
It is stipulated that Mr. Pappalardo and the other property owners are not motivated by a desire to harm Mr. Casey or deny him his due process right, although that may be the result of their exercise of their right. While the DEQ Compliance Order issued to Mr. IsPappalardo was the event that triggered the eviction proceedings, he testified that he had been dissatisfied with the arrangement for some time. The reasons he gave were legitimate: the land is almost filled so that the original consideration for the 20 year lease with Mr. Casey is no longer present; the land’s value has increased with the passage of time and the filling so that a $1.00 annual rental is no longer satisfactory; the property owners are interested in investigating other uses for the property that do not pose the potential liability for them, real or imagined, of a landfill.
The record does not show that the property owners exercised their right in order to harm Mr. Casey or for any purpose other than that for which it was granted. They have demonstrated a serious and legitimate interest to justify seeking return of their property. While it is unfortunate that their action may accomplish DEQ’s objective, regardless of the outcome of the administrative hearing on the Compliance and Penalty Notices issued to Mr. Casey, that does not constitute an abuse of the property owners’ legal right to possession. See, Mascaro, 496 So.2d at 430.
Because the criteria for applying the abuse of rights doctrine is not satisfied in this case, the trial court’s judgment is affirmed.
AFFIRMED.

. Although the record does not contain the date of Mr. Salvadore Pappalardo’s death, the Judgment of Possession putting his widow and sons in possession of the property was dated May 15, 1989.