732 So.2d 787 (1999)
Kenneth STEIER, et al., Plaintiffs-Appellants,
v.
Fred HELLER, et al., Defendants-Appellees.
No. 31,733-CA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*788 Arbour & Aycock by Larry Arbour, West Monroe, Counsel for Appellants.
Hudson, Potts & Bernstein by Gordon L. James, Monroe, Counsel for Appellees.
Before NORRIS, STEWART and PEATROSS, JJ.
STEWART, J.
Kenneth Steier, individually and on behalf of his minor children, Jacob Steier and Joshua Steier, and his wife, Cindy Steier ("Steiers"), appeal the trial court's denial on summary judgment of their claim that the defendants, Fred Heller, Richard L. Heller, and Robert G. Heller ("Hellers"), abused their rights as lessors by demanding that the Steiers vacate their rental home during the latter stages of Cindy Steier's pregnancy. Finding no error in the trial court's judgment, we affirm.

FACTS
In 1993, Dr. Kenneth Steier, an internist and critical care physician, and Cindy Steier leased a house located at 4710 Bon Aire Drive in Monroe, Louisiana, from the Hellers for a one year period. The Steiers and Hellers entered into a second lease agreement for the house on February 28, 1994. The 1994 lease was on a month-to-month basis with rental payments of $945 per month. The lease agreement included a provision stating the Hellers' intent to sell the house. A portion of the lease agreement providing that the lessee waives notice of any sale or termination of the lease was scratched out and initialed "KS." Inserted in its place was a handwritten provision stating, "The parties hereby agree to 60 day notice of any need to vacate by the renters." This handwritten provision was initialed "KS", signed by Fred Heller, and dated February 28, 1994.
According to the deposition testimony of Fred Heller, the Hellers first tried to sell the house in 1992 by listing it with a real estate agent. The house remained on the market for six months and no offers were received. Efforts by Fred Heller to sell the house on his own were also unsuccessful. After entering into the 1994 lease agreement with the Steiers, the Hellers again placed the house on the market and enlisted the assistance of Lucy Kincaid, a real estate agent with Why USA Realty. This attempt to sell the house was also unsuccessful. In an affidavit, Ms. Kincaid explained that she had difficulty arranging times to show the house to prospective buyers because Kenneth Steier complained that it was not convenient. Ms. Kincaid also explained that the house was filthy and had a foul odor from pets urinating on the floors. According to Ms. Kincaid, at least one prospective buyer refused to enter the house because of the foul odor. Due to these difficulties, the house was taken off the market in April 1994.
In his deposition, Kenneth Steier explained that the realtor placed a lock-box at the door for access and that this caused concern because of valuables kept in the house. The Steiers wrote to Fred Heller requesting removal of the lock-box and prior scheduling of times to show the house. Kenneth Steier stated in his deposition that he came up with the language requiring sixty days notice of any need to vacate the leased premises. Steier also stated that he wanted the lease on a month-to-month basis because he did not *789 want to be locked in if he found another house. The Steiers admitted having three dogs and two cats in the house. One of the dogs had two litters of puppies which were kept for six weeks in a plastic baby pool in the living room of the house. The Steiers admitted that some soiling did occur but that the floors were professionally cleaned either every six months or once a year.
In June 1995, Cindy Steier learned that she was pregnant. Soon after, she learned that she was expecting twins. The Steiers hired a maid to assist Cindy Steier with housework. Fred Heller, who had regular contact with the Steiers and whose daughter sometimes took care of the Steiers' pets and did yard work around the house, learned of the pregnancy during the summer. Cindy Steier's pregnancy proceeded without difficulty.
On December 29, 1995, Fred Heller hand-delivered to Kenneth Steier a letter notifying the Steiers of the Hellers intent to sell the house and requesting that the Steiers vacate the house within sixty days, as required by the terms of the 1994 lease agreement. The Hellers granted the Steiers a first option to purchase the house until January 15, 1996, at a price previously discussed by the parties in February 1994. The letter referred to the Hellers' awareness of the Steiers' "circumstances." The letter explained that the Hellers' decision to terminate the lease was a business decision and that the house must be available for showings in March. Fred Heller explained in his deposition that he and his brothers wanted the house on the market in time for spring to take advantage of the low interest rates and the bayou location. Fred Heller stated that Kenneth Steier did not seem concerned when he received the notice to vacate and merely indicated that he and his wife would "make out."
Kenneth Steier stated in his deposition that he was in a "state of shock" when he received the notice to vacate. On January 3, 1996, Steier wrote to Fred Heller proposing an increase in rent to $1,000 per month and agreeing to either buy or vacate the house by January 31, 1997. Steier expressed surprise at the notice to vacate since the house was taken off the market in April 1994, causing them to discontinue searching for another house at that time. Steier informed Fred Heller that Cindy Steier was due to deliver the twins in February or March and that the idea of having to move caused her "a great deal of stress." Steier further wrote that his wife's doctor "feels strongly that it would be medically risky to try to move now and could provoke a premature labor in this high-risk pregnancy." Jim Griffin, the Steiers' neighbor and Fred Heller's acquaintance, also spoke to Fred Heller on behalf of the Steiers to request that they be allowed to stay in the house until after the birth of the twins.
Fred Heller contacted his brothers about allowing the Steiers additional time to remain in the house. The Hellers decided not to extend the lease upon considering the Steiers' lack of cooperation in 1994 when attempting to sell the house and Fred Heller's own experience in moving during his wife's pregnancy. In a letter to the Steiers dated January 4, 1996, Fred Heller denied the Steiers' request to remain in the house and confirmed the prior notice to vacate within sixty days.
Cindy Steier stated in her deposition that she experienced stress after receiving the notice to vacate and that she cried "for a few nights" worrying where the children would live. Kenneth Steier described his wife's condition in more dramatic terms, stating that she was "in a panic, not sleeping at night, extremely upset, emotionally labile, very concerned." On January 19, 1996, Cindy Steier went into premature labor and delivered the twin boys pre-term at thirty-three weeks. On January 24, 1996, the Steiers moved into their new home. The twins were discharged from the hospital on February 3, 1996.
*790 On July 18, 1996, the Steiers filed suit for damages against the Hellers. The Steiers alleged that the Hellers abused their right to have them vacate the leased premises upon sixty days notice knowing of the risk involved in Cindy Steier's pregnancy. The Steiers further alleged that the stress of the move caused Cindy Steier's premature labor and the pre-term delivery of the twins. The Hellers filed a motion for summary judgment which the trial court granted on May 28, 1998. The Steiers now appeal the summary judgment dismissing their suit.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria which govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991); Orea v. Brannan, 30,628 (La.App. 2nd Cir. 6/24/98), 715 So.2d 108; Berzas v. OXY USA, Inc., 29,835 (La.App. 2nd Cir. 9/24/97), 699 So.2d 1149. The appellate court must question whether a genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318 (La.1993); Orea v. Brannan, supra.
The law governing the summary judgment procedure is set forth in La. C.C.P. art. 966. As amended in 1996, Article 966 provides that the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. La. C.C.P. art. 966(A)(2); Traweek v. Jackson, 30,248 (La.App. 2nd Cir. 2/25/98), 709 So.2d 867. The motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
As amended again in 1997, Article 966 now provides that when the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant is not required to negate all essential elements of the adverse party's claim, action, or defense. Rather, once the movant points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, and the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment shall be granted. La. C.C.P. art. 966(C)(2); Orea v. Brannan, supra; Berzas v. OXY USA, Inc., supra. Further, La. C.C.P. art. 967 provides that the opposing party cannot rest on the mere allegations or denials in his pleadings, but must present evidence which will establish that material facts are at issue. Orea v. Brannan, supra.
In light of the foregoing principles, we must determine whether there is a genuine issue of material fact which precludes summary judgment in favor of the Hellers on the Steiers' abuse of rights claim. This first requires examination of the abuse of rights doctrine and its application in Louisiana courts.
The doctrine of abuse of rights has been invoked sparingly in Louisiana. Massachusetts Mut. Life Ins. Co. v. Nails, 549 So.2d 826 (La.1989); Oliver v. Central Bank, 26,932 (La.App. 2nd Cir. 5/10/95), 658 So.2d 1316, review denied, 95-1469 (La.9/22/95), 660 So.2d 477; G.I.'s Club of Slidell, Inc. v. American Legion Post No. 374, 504 So.2d 967 (La.App. 1st Cir.1987). The abuse of rights doctrine is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights. Massachusetts Mut. Life Ins. Co. v. Nails, supra; Truschinger v. Pak, 513 So.2d 1151 (La.1987); Oliver v. Central Bank, supra. While the *791 abuse of rights doctrine has been invoked in cases involving a landlord's exercise of rights against a tenant, it has not been successful. See Truschinger v. Pak, supra; Lilawanti Enterprises, Inc. v. Walden Book Co., Inc., 95-2048 (La.App. 4th Cir. 2/29/96), 670 So.2d 558; Owens & Sons, Inc. v. Casey, 94-2580 (La.App. 4th Cir. 7/26/95), 659 So.2d 541, review denied, 95-2170 (La.11/17/95), 663 So.2d 711; Capone v. Kenny, 94-0888 (La.App. 4th Cir. 11/30/94), 646 So.2d 510; G.I.'s Club of Slidell, Inc. v. American Legion Post No. 374, supra; Mascaro v. Hudson, 496 So.2d 428 (La.App. 4th Cir.1986); Housing Authority of City of Abbeville v. Hebert, 387 So.2d 693 (La.App. 3rd Cir.1980), writ refused, 394 So.2d 275 (La.1980). The abuse of rights doctrine applies only when one of the following conditions are met:
(1) the predominant motive for exercise of the right is to cause harm;
(2) there is no serious or legitimate motive for exercise of the right;
(3) the exercise of the right violates moral rules, good faith, or elementary fairness; or
(4) the exercise of the right is for a purpose other than that for which it was granted.
Massachusetts Mut. Life Ins. Co. v. Nails, supra; Truschinger v. Pak, supra; Lilawanti Enterprises, Inc. v. Walden Book Co., Inc., supra; Owens & Sons, Inc. v. Casey, supra; Oliver v. Central Bank, supra; McInnis v. McInnis, 618 So.2d 672 (La.App. 2nd Cir.1993); G.I.'s Club of Slidell, Inc. v. American Legion Post No. 374, supra.
In their petition, the Steiers asserted that there was no serious or legitimate purpose in the Hellers' exercise of their right to terminate the lease, that the Hellers' predominant motive was to place them in a position of harm, and that the Hellers' exercise of their right was against moral rules, good faith, and elementary fairness. On appeal, the Steiers primarily argue that the Hellers abused their rights as lessors because the exercise of the right to terminate the lease upon sixty days notice was against moral rules, good faith, and elementary fairness. The Steiers assert that Fred Heller knew Cindy Steier was pregnant and that her due date was almost sixty days from the date of the notice to vacate. The Steiers further assert that even after Fred Heller was advised that the move would be medically risky for Cindy Steier, the Hellers still required that they vacate the house and offered only the "shallow excuse" that the house had to be ready to put on the real estate market for spring. Contending that summary judgment was not appropriate, the Steiers argue that a genuine issue of material fact exists as to whether the Hellers acted against morals, good faith, or elementary fairness and that this is a subjective determination which is not appropriate for disposition on summary judgment.
Jurisprudence does provide that the summary judgment procedure is not suitable for disposition of cases requiring judicial determination of subjective facts such as motive, intent, or knowledge. Tucker v. Northeast Louisiana Tree Service, 27,768 (La.App. 2nd Cir. 12/6/95), 665 So.2d 672, writ denied, 96-0063 (La.3/8/96), 669 So.2d 404; Bailey v. United Gas Pipe Line Co., 27,655 (La.App. 2nd Cir. 12/6/95), 665 So.2d 664, writ denied, 96-0058 (La.2/28/96), 668 So.2d 372. However, disposition of the present case does not involve a subjective determination of the Hellers' motive, intent, or knowledge in their exercise of the right to terminate the month-to-month lease by providing sixty days notice. The record presents no factual dispute as to the events that occurred. At issue is simply whether a genuine issue of material fact exists regarding whether the Hellers' actions under the circumstances presented constitutes an abuse of rights. This can be determined by examining the undisputed facts in light of the abuse of rights doctrine.
*792 The supreme court cited with approval Cueto-Rua, Abuse of Rights, 35 La.L.Rev. 965, 996-999 (1975), to explain the good faith, moral rules, and elementary fairness criteria of the abuse of rights doctrine. Illinois Central Gulf Railroad Company v. International Harvester Company, 368 So.2d 1009 (La.1979); G.I.'s Club of Slidell v. American Legion Post No. 374, supra. Cueto-Rua stated that while jurists accept the abuse of rights doctrine, they seek "objective criteria whereby basic stability of legal institutions, of vested rights and of protected interests, can be achieved without creating uncertainties which could jeopardize civil and commercial transactions." See Cueto-Rua, supra, at 999. Cueto-Rua further explained:
The reference to the principles of good faith, positive morality, and good customs, indicate their concern with the identification of practices, ways of being, and standards so widely accepted and understood, that the discretions of the judges would become circumscribed.
Id.
The instant case involves the lessors' exercise of a right to terminate a month-to-month lease by providing sixty days notice to the lessee. This right was specifically provided for in the written lease agreement as a benefit to the lessee and at the lessee's request. A contract between parties is the law between them. La. C.C. art.1983. Courts are bound to give legal effect to all contracts according to the true intent of the parties. Intent is determined by the words of the contract when they are clear and explicit and lead to no absurd consequences. La. C.C. art. 2046; McCrary v. Park South Properties, 560 So.2d 38 (La.App. 2nd Cir.1990), writ denied, 563 So.2d 1156 (La.1990); SBS-South College Medical Center v. Trahan, 505 So.2d 969 (La.App. 3rd Cir.1987), writ denied, 508 So.2d 827 (La.1987); Thomas v. Knight, 457 So.2d 1207 (La.App. 1st Cir. 1984). This rule applies to contracts of lease. Thomas v. Knight, supra. When the terms of a written contract are clear, unambiguous, and lead to no absurd consequences, parol evidence cannot be used to vary or explain the contract terms, and the parties meaning or intent must be determined from the four corners of the contract. McCrary v. Park South Properties, supra; Thomas v. Knight, supra.
The terms of the lease in the instant case clearly and unambiguously grant the Hellers the right to terminate the lease upon sixty days notice to vacate. The Steiers do not dispute that the Hellers have this right under the terms of the lease. However, the Steiers argue that at the time the lease agreement was entered into and the sixty days notice was added, Cindy Steier was not pregnant. According to the Steiers, Cindy Steier's pregnancy is a condition that renders the Hellers' exercise of their contractual right against morals, good faith, and elementary fairness. Although the notice to vacate was delivered during the latter stages of Cindy Steier's pregnancy, nothing in the record regarding Cindy Steier's condition suggests that the Hellers abused their right to terminate the lease.
The record indicates that Cindy Steier's pregnancy proceeded normally until the time of the pre-term delivery. There is nothing suggesting that the Hellers had any knowledge of complications in Cindy Steier's pregnancy when Fred Heller delivered the notice to vacate on December 29, 1995. Kenneth Steier's warning in his letter to Fred Heller dated January 3, 1996, that the move would be medically risky is not supported by the deposition testimony of the physicians who treated Cindy Steier during her pregnancy. None of these physicians even stated that they would have barred Cindy Steier from participating in the move. The fact that Cindy Steier went into premature labor a couple of weeks after the Steiers received the notice to vacate neither suggests that the Hellers abused their rights under the lease nor creates a genuine issue of material fact as to whether the Hellers' exercise *793 of their right was against morals, good faith, or elementary fairness.
While the Steiers' situation at the time of receiving the notice to vacate may have been such as to elicit concern, their situation was not so severe as to render the Hellers' exercise of their contractual right abusive. The Steiers received the benefit of the sixty days notice requirement added by them into the 1994 lease agreement. Louisiana law only requires a lessor to provide written notice at least ten days before expiration of the month for termination of a month-to-month lease. La. C.C. art. 2686. The Steiers were financially able to secure suitable housing and move by January 24, 1996. They were also financially able to obtain the assistance of movers to ease the transition. Under these circumstances, we find that the Steiers have not raised a genuine issue of material fact as to whether the Hellers' actions were against morals, good faith, and elementary fairness.
Furthermore, nothing in the record supports the Steiers' allegation that the Hellers' predominant motive in exercising their right to terminate the lease was to cause harm by forcing the Steiers to purchase the house in order to avoid the medical risk of pre-term labor to Cindy Steier and the twins. The Steiers point to the option to purchase included in the December 29, 1995, notice to vacate as indicative of the Hellers' intent to force a quick sale. The option to purchase evidences the Hellers' stated intention to sell the house and does not indicate that the Hellers' exercised their right to terminate the lease for the purpose of harming the Steiers. As discussed above, nothing in the record suggests that Fred Heller was aware of any problems with Cindy Steier's pregnancy when he delivered the notice to vacate, and nothing suggests that Cindy Steier was actually experiencing any problems with her pregnancy. The fact that Kenneth Steier subsequently advised Fred Heller that the move would be medically risky does not suggest that the Hellers exercised their right to terminate the lease in order to harm Cindy Steier or the twins.
The Hellers' motive in terminating the lease is clearly expressed in the lease agreement and in the notice to vacate. The Hellers desired to sell the house. Prior attempts to sell the house were unsuccessful. As Fred Heller explained in his deposition, they wanted to take advantage of the bayou location by showing the house during the spring, and they wanted to take advantage of the favorable interest rates. Under these circumstances, we find that the Hellers' primary motive was economic and that this is a serious and legitimate motive. See Truschinger v. Pak, supra. The Steiers' allegations, along with the undisputed facts of this case, do not create a genuine issue of fact as to whether the Hellers' motive was to harm the Steiers or as to whether the Hellers had a serious and legitimate motive for the exercise of their right to terminate the lease.

CONCLUSION
For the foregoing reasons, we affirm the trial court's summary judgment dismissing the Steiers' claims. Costs are assessed against the Steiers.
AFFIRMED.