liKOSTELKA, Judge.
In this premises liability action, Travis Waters, Sr. (“Waters”) appeals the summary judgment granted in favor of Elsie Coleman (“Coleman”). We affirm.
Facts
Sometime before noon, on January 28, 1998, Waters visited Coleman, his mother-in-law, at her Monroe, Louisiana home. As Waters arrived, Coleman asked him to back his vehicle out of her driveway so she could move her car out of the carport in order to clean an oil spill caused by her vehicle. Coleman’s car had been leaking oil for approximately two years and required a quart of oil every two to three weeks. Coleman cleaned the oil accumulation, which would sometimes get thick enough to contain animal tracks and hair, every four to six weeks. On a previous occasion, Waters had assisted Coleman in cleaning the spill with gasoline. On this day also, Waters offered Coleman aid in cleaning up the spill, but Coleman declared that she could handle the chore alone. As Waters entered Coleman’s home, he observed her place boiling water and lye, a degreasing agent, over the oil spot. Thereafter, Waters and Coleman entered the house and had coffee while waiting for another kettle of water to boil. Waters offered to pour the second kettle of water on the oil spot. Unfortunately, after Waters walked out of the door with the kettle in his right hand and took two or three steps, he slipped and fell onto the carport floor. Due to the fall, Waters incurred back injuries that eventually required surgery.
On November 10, 1998, Waters and his wife, individually, and on behalf of their minor son, sued Coleman and her liability insurer, Vesta Insurance Company. On October 3, 2000, Coleman filed a motion for ^summary judgment, alleging particularly that because Waters had actual knowledge of the oil spot and chose to clean it, Coleman breached no duty to him. After hearing arguments on the motion, the trial court granted summary judgment in favor of Coleman concluding that under these circumstances she owed no duty to Waters. Waters appeals, urging that summary judgment was inappropriate.
*251 Law
Appellate courts review summary judgments de novo under the same criteria which govern the district courts’ consideration of whether summary judgment is appropriate. Schroeder v. Board of Sup’rs of Louisiana State University, 591 So.2d 342 (La.1991); Steier v. Heller, 31,733 (La.App. 2d Cir.05/05/99), 732 So.2d 787. The law governing the summary judgment procedure is set forth in La. C.C.P. art. 966. As amended in 1996, Article 966 provides that the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. La. C.C.P. art. 966(A)(2); Steier, supra; Traweek v. Jackson, 30,248 (La.App.2d Cir.02/25/98), 709 So.2d 867. The motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
As again amended in 1997, Article 966 now provides that when the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, he is not required to negate |3all essential elements of the opposing party’s claim, action, or defense. Rather, once the mover points out that there is an absence of factual support for one or more elements essential to the opposing party’s claim, action, or defense, and the opposing party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at'trial, there is no genuine issue of material fact and summary judgment shall be granted. La. C.C.P. art. 966(C)(2); Steier, supra. Further, La. C.C.P. art. 967 provides that the opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence which will establish that material facts are at issue. Id. Ultimately, however, the burden of proof remains with the mover, who must meet the initial burden of making a prima facie showing of entitlement to summary judgment. See, Mark Tatum and Judge William Norris, III, Summary Judgment and Partial Judgment in Louisiana: The State We’re In, 59 La. L.Rev. 131, 141 (1998).
Traditionally, there are five elements a plaintiff must establish to prove a general negligence claim: 1) cause-in-fact; 2) duty; 3) breach of duty; 4) legal or proximate cause; and 5) actual damages. Roberts v. Benoit, 605 So.2d 1032 (La.1991). If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable. Perkins v. Entergy Corp., 2000-1372 (La.03/23/01), 782 So.2d 606.
The duty of a landowner is not to insure against the possibility of an accident on his premises, but rather to act reasonably in view of the probability of injury to others. Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976); Wiley v. Sanders, 34,923 (La.App. 2d Cir.08/22/01), 796 So.2d 51, and cases cited therein.
DISCUSSION
After de novo review, we agree with the trial court, although for different reasons, that this case was appropriately resolved via summary judgment.[1] The depositions of both Waters and Coleman, submitted in support of and in opposition *252 to the summary judgment, are substantially consistent. What they reveal is that Waters was aware of the car’s oil leak and had helped Coleman clean the spot with gasoline approximately seven or eight months prior to the accident. When Waters arrived, Coleman informed him that she was going to pour water and lye on the oil spot. This was the first time that she had utilized those substances in the cleaning process. Thereafter, Waters observed Coleman pour the water and lye on the spot before he entered her house. Waters realized he had to be careful because Coleman had poured water on the carport along with the lye as a degreaser. By the time Waters came out with the second kettle of water, Coleman agreed that the area of the oil spot had actually expanded. Nevertheless, Waters admitted that as he exited the house, his attention was focused on where he intended to pour the water; he did not “know the water had ... leaked down that far” and did not see what made him fall until after the accident. Waters testified he was not “looking down at the time” and “wasn’t really looking to see was there any water or nothing down there.”
| [¡Subsequent to Waters’ fall, Coleman now treats oil spots with sand. She admitted that she put nothing around the oil spill after she poured the water on it and felt that if she had known she would have guests, she would have waited to clean the spill until after her company left because she didn’t want them tracking the solution into the house. Coleman did not feel that her actions created a dangerous situation, but we need not reach that question.
Of course, the breach of a duty is a question of fact. Thielmier v. Louisiana Riverboat Gaming Partnership, 31,739 (La.App. 2d Cir.03/31/99), 732 So.2d 620. Although breach of duty is generally a question for the trier of fact, summary judgment is proper when reasonable minds could not differ on whether a defendant breached the duty to act reasonably. Tucker v. American States Ins., 31,970 (La.App. 2d Cir.09/22/99), 747 So.2d 620. In the present case, the evidence is clear that Waters was aware not only of the existence of the oil spill but had previously assisted Coleman in cleaning it with gasoline. Upon his arrival at her home, Coleman informed Waters of her planned cleaning actions. Thereafter, Waters observed Coleman pour a kettle of hot water over what he knew to be a degreaser. Despite his understanding that he should be careful due to Coleman’s actions, Waters voluntarily undertook to clean the spot and neglected to look down as he reentered the carport. Under these circumstances, we conclude that a reasonable person should have not only been cognizant of the effect that hot water and a degreaser would have on an oil spill, but should have, as a result, looked down upon exiting the door to evaluate and discover the results. Simply stated, the exercise of reasonable care by |fiWaters would have disclosed the obvious result of Coleman’s degreasing activity — an expanded and slick oil and water spot. The landowner breaches no duty and is not liable for an injury resulting from a condition which should have been observed by an individual in the exercise of reasonable care or which was as obvious to a visitor as to the landowner. Shelton, supra; Tucker, supra.[2] With the supporting and opposing documents showing Waters’ previous experience in cleaning the oil spot, Coleman’s *253 notice to Waters of her intended cleaning activity and Waters’ observation of Coleman pouring hot water with what he knew to be a degreasing agent, we determine that reasonable minds must inevitably conclude that Coleman acted reasonably under the circumstances and breached no duty to Waters. Accordingly, Waters has failed to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proving Coleman’s fault. Therefore, summary judgment was proper. Costs are assessed to Waters.
AFFIRMED.

. Namely, the lack of factual support to prove a breach of duty rather than that no duty existed.

. It is Waters’ awareness of both the oil spot and cleaning process which distinguishes this case from Deville v. State Farm Ins. Co., 617 So.2d 1255 (La.App. 3d Cir.1993). In Deville, the court affirmed the jury determination that the defendant had breached the duty to warn plaintiff of an undisclosed carport oil and water spot.