TERRI F. LOVE, Judge.
_JxThis appeal arises from the cash surrender of plaintiffs one million dollar life insurance policy assigned as collateral to a bank holding the promissory notes for loans in default on two French Quarter hotels. In conjunction with the cash surrender, the life insurance policy was can-celled. The plaintiffs filed a lawsuit alleging that the insurance company wrongfully surrendered the husband’s life insurance policy to a third-party. The insurance company filed a motion for summary judgment asserting that it owed no duty to the plaintiff to ensure that the assignment was being properly exercised. The trial court granted the motion for summary judgment finding that the language of the policy and assignment waived any duty the insurer may have had to provide notice of a third-party’s cancellation of the life insurance policy. Plaintiffs appealed contending that the insurance company breached a basic duty to keep the policy holder informed about the status of the policy. We find genuine issues of material fact exist as to whether the insurance company breached a duty to the plaintiffs by failing to notify them that the insurance policy was about to be cancelled. Accordingly, we reverse and remand for further proceedings.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1995, Brent Kovach and Ellen Kovach procured a one million dollar life | ^insurance policy (“Policy”) for Mr. Ko-vach from New England Mutual Life Insurance Company (“New England”). Mr. Kovach was subsequently diagnosed with cancer, but the cancer is now in remission.
Mr. Kovach was a shareholder of St. Peter, Inc.’s hotel and a member of A Creole House, LLC, which also ran a small hotel (collectively “Hotels”) in the French Quarter. Following Hurricane Katrina, the Hotels required refinancing. Whitney Bank f/k/a Hancock Bank of Louisiana (“Hancock”) agreed to provide the loans if Mr. Kovach personally guaranteed the loans and executed a collateral assignment (“Assignment”) of the Policy. Mr. Kovach complied. The Hotels failed to pay the loan payments, so in May 2010, Hancock sent a default letter to New England seeking the cash surrender value of the Policy. Based on the terms of the Assignment, New England tendered the cash surrender value, $52,316.33, to Hancock. In February 2011, Mr. Kovach learned that his Policy was cancelled by New England when Hancock ordered the cash surrender. He then sought to have the Policy reinstated, but soon discovered that he was unable to procure life insurance after being diagnosed with cancer.
Thereafter, the Kovaches filed a Petition for Damages and Breach of Contract against Hancock and New England alleging that Hancock and New England failed to follow proper procedure for surrendering the Policy. Hancock and New England filed Motions for Summary Judgment. *439 The trial court found “[b]y his own signature Mr. Kovach twice relieved New England of any duty that it may have had to protect him from a defective exercise of an assignee’s rights.” The trial court further noted that the “plaintiff cannot prove an essential element of his case, the violation of a duty owed him either in tort or in contract by New England Life.” Thus, the trial court granted New England’s Motion for Summary |sJudgment and dismissed the Kovaches’ claims.[1] The trial court denied Hancock’s Motion for Summary Judgment.[2] The Kovaches’ devolu-tive appeal followed.
The Kovaches contend that the trial court erred in granting New England’s Motion for Summary Judgment because the Assignment did not waive New. England’s obligations, the Assignment was not legally enforceable, the surrender of the Policy was against public policy, and a reasonable jury could have found that New England breached its contractual or “ex delicto ” duties to them.

STANDARD OF REVIEW

Appellate courts review the granting of summary judgments with the de novo standard of review. Hogg v. Chevron USA, Inc., 09-2632, p. 5 (La.7/6/10), 45 So.3d 991, 996. This Court views “the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant.” Hines v. Garrett, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765. “[T]he judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.” Id. “All doubts should be resolved in the non-moving party’s favor.” Id.

MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). “This motion is a |4procedural device used to avoid a full-scale trial when there is no genuine issue of material fact.” Gullatt v. Allstate Ins. Co., 10-448, pp. 3-4 (La.App. 5 Cir. 2/15/11), 61 So.3d 731, 733. “In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.” Bell v. Dunn, 04-2117, p. 4 (La.App. 4 Cir. 12/21/05), 924 So.2d 224, 229. “The standard for finding a ‘genuine issue’ is not whether the parties disagree, for we may accept as a given that the parties will usually not be in agreement, but whether reasonable fact finders could reach different conclusions.” Id. “Only if reasonable fact finders could reach different conclusions are we entitled to find that a genuine issue exists.” Id.
“The burden of proof remains with the movant.” La. C.C.P. art. 966(C)(2). Because New England would not have born the burden of proof at trial, it was not required to “negate all essential elements of plaintiffs’ claim.” Bowman v. City of Baton Rouge/Parish of E. Baton Rouge, 02-1376, p. 5 (La.App. 1 Cir. 5/9/03), 849 So.2d 622, 626. “Rather, its burden on the motion for summary judgment is to point out to the court that there is an absence of support for one or more elements essential *440 to plaintiffs’ claims.” Bowman, 02-1376, p. 5, 849 So.2d at 626. See La. C.C.P. art. 966 C(2). “Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.” Babin v. Winn-Dixie Louisiana, Inc., 00-0078, p. 4 (La.6/30/00), 764 So.2d 37, 40.
“Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the |ssubstantive law applicable to the case.” Sanders v. Ashland Oil, Inc., 96-1751, p. 7 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1035. “Interpretation of a contract is usually a legal question which can be properly resolved in the framework of a motion for summary judgment.” Id., 96-1751, p. 7, 696 So.2d at 1036.

Suspensive Condition

The Kovaches assert that the Assignment was not legally enforceable because of an unfulfilled suspensive condition. The Kovaches contend that the twenty-day notice process employed by Hancock constituted a suspensive condition.
La. C.C. art. 1767 provides that “[i]f the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.” Paragraph E(2) of the Assignment states:
[t]hat the Assignee will not exercise either the right to surrender the Policy or {except for the purpose of paying premiums} the right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premium when due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the address last supplied in writing to the Assignee specifically referring to this agreement, notice of intention to exercise such right....
Thus, the Kovaches claim that Hancock exercised a right it did not yet legally possess because they did not receive notification twenty days prior to Hancock’s request to New England to surrender the Policy. Hancock may have not acquired the legal right to request surrender of the Policy if notice was not properly given. However, the case sub judice concerns New England’s obligations to the Kovaches. Paragraph E(2) pertains to the obligations of Hancock to Mr. Kovach. Hancock was not entitled to enforce the Assignment prior to providing Mr. Ko-vach | ¿with twenty-days notice. However, Paragraph F specifically provides that “[t]he sole signature of the Assignee shall be sufficient” for New England to surrender the Policy. Meaning, there was no “uncertain event” that needed to occur before New England could surrender the Policy once it received the letter from Hancock. Accordingly, we find that the Kovaches’ assertion lacks merit.

Waiver of Duty

The Kovaches contend that the trial court erred by finding that the Assignment waived New England’s obligations. The Kovaches assert that New England had a duty to discover whether Hancock sent Mr. Kovach the 20-day notice before requesting the surrender of the Policy.
However, the Kovaches’ assertion lacks merit. The Assignment provided that:
F. The Insurer is hereby authorized to recognize the Assignee’s claim to rights hereunder without investigating the reason for any action taken by the Assignee, or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E(2) above or otherwise, or the appli *441 cation to be made by the Assignee of any amounts to be paid to the Assign-ee. The sole signature of the Assign-ee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefor to the Insurer. Checks for all or any part of the sums payable under the Policy and assigned herein shall be drawn to the exclusive order of the As-signee if, when, and in such amounts, as may be requested by the Assignee. (Emphasis added).
Thus, according to the Assignment, New England did not owe the Kovaches a responsibility to investigate Hancock’s reasons for requesting the surrender of the Policy. Additionally, the Assignment specifically stated that New England had the authority to surrender the Policy without becoming involved in Hancock’s twenty-_Jjday notice process. The Assignment provided that “[t]he sole signature of the As-signee [Hancock] shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefor to the Insurer.” Hence, while Mr. Kovach remained the owner of the Policy,[3] the Assignment eliminated duties New England might have had to the Kovaches regarding the actual surrender of the Policy.

Contractual Duties

The Kovaches contend that a reasonable jury could find that New England breached its “ex contractu” duties. The Kovaches assert that New England owed an independent duty to keep Mr. Kovach “informed of essential and basic developments, such as the fact that it is considering a request to surrender the policy,” which resulted in the cancellation of the Policy. The Kovaches aver that “[a] reasonable jury could find that the purpose of a life insurance policy is to provide benefits upon the owner’s death” and “that the principles of equity includefd] a simple phone call to Mr. Kovach, a simple e-mail, or even the provision of a simple copy of the bank’s letter requesting surrender.”
“An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation set forth in the Louisiana IsCivil Code.” Estopinal v. Parish of St. Bernard, 09-1382, p. 2 (La.App. 4 Cir. 2/24/10), 32 So.3d 991, 992. “Language in an insurance policy that is clear, expresses the intent of the parties, and does not violate a statute or public policy, must be enforced as written.” Id., citing La. C.C. arts.2045-2057. “The meaning and intent of the parties to a written instrument should be determined within the four corners of the document and its terms should not be explained or contradicted by extrin *442 sic evidence.” Corbello v. Iowa Prod., 02-0826, p. 6 (La.2/25/03), 850 So.2d 686, 693.
The Louisiana Civil Code provides that:
[w]hen the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.
La. C.C. art. 2054. “Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.” La. C.C. art. 2055. Further, “[g]ood faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation.” La. C.C. art. 1759. “There is a strong public policy requiring prior notice to the insured of cancellation of an insurance policy in order to afford sufficient time to obtain other insurance.” Rachuba v. Hickerson, 503 So.2d 570, 571 (La.App. 4th Cir.1987).
The trial court stated that:
[sjince the insured has not died and since the insurer complied with its contractual undertaking to permit a collateral assignment of the policy by honoring |c|Mr. Kovach’s assignment to the Bank, the court finds no basis for New England to be liable to Mr. Kovach under the contract of insurance.
However, Plaintiff opposed New England’s motion for summary judgment using terms and phrases associated with tort cases. He argues that because the issue here involves a collateral assignment whereby Mr. Kovach remained owner and Ms. Kovach beneficiary of the policy at issue, New England “owed a duty of care” to'exercise due diligence before accepting surrender of the policy.
There is no need for an erudite exegesis of the duty-risk analysis that is applied in Louisiana to resolve tort cases. Suffice it to say that there must have been a legally imposed duty upon 'the alleged tortfeasor which he must have breached before he can be subjected to liability in tort. Even if the law imposes the duty suggested by Mr. Ko-vach, he absolved New England of any duty to determine the validity of an assignment when he agreed to the contract of insurance by his signature. He did so again when he contracted with Hanc.ock Bank for the collateral assignment of the policy by authorizing New England to recognize the Bank’s claim without investigating its reasons for exercising them, the validity of its action, the amount of the liability, the existence of a default or even whether proper notice had been given the assignor. As trite as it may sound, signatures are not mere ornaments to documents purporting to have legal efficacy.
In the simplest of terms, contracts establish the law between the parties thereto. By his own signature Mr. Ko-vach twice relieved New England of any duty that it’ may have had to protect him from a defective exercise of an assign-ee’s rights. Thus, the court is impelled to the conclusion that plaintiff cannot prove an essential element of his case, the violation of a duty owed him either in tort or in contract by New England Life. Thus judgment on the motion must be in favor of New England.
The Kovaches contend that the principles of equity and good faith should apply to hold New England responsible for can-celling the Policy. Accordingly, they assert that granting the summary judgment was improper because whether New Eng *443 land breached an implied contractual duty creates a genuine issue of material fact for a reasonable jury. We agree. Life insurance companies enter into |incontracts to provide life insurance to its insureds. Cancelling the Policy after the cash surrender without notifying Mr. Kovach would have been inconsistent with the intention of the Policy.
“A motion for summary judgment is rarely appropriate for disposition of a case requiring judicial determination of subjective facts such as intent, motive, malice, good faith, or knowledge or of issues that require a determination of the reasonableness of acts and conduct of parties under all the facts and circumstances of a case.” Smith v. Kopynec , 12-1472, p. 7 (La.App. 1 Cir. 6/7/13), 119 So.3d 835, 839. (Emphasis added). “[T]he breach of a duty is a question of fact.” Waters v. Coleman, 35,292, p. 5 (La.App. 2 Cir. 12/5/01), 803 So.2d 249, 252.
While we agree with the trial court that Mr. Kovach’s signature on the Assignment alleviated New England’s duty to investigate the letter of surrender from Hancock, we disagree that this was the only legal duty New England owed to Mr. Kovach. The trial court failed to examine the basic duties arising from the contract between New England and Mr. Kovach. The Assignment, once signed and acknowledged, became part of the Policy New England had with Mr. Kovach. While the purpose of life insurance is to provide a benefit after one’s passing, Mr. Kovach utilized the Policy as collateral to secure a loan. Mr. Kovach agreed to the language and terms of the Assignment, which provided that New England had no duty 'to investigate the notice of surrender written by Hancock. However, New England possessed a contractual relationship with Mr. Kovach independent of Hancock. New England contracted to provide Mr. Kovach with a one-million dollar life insurance policy: the object of which was to provide life insurance. Therefore, a reasonable fact finder could conclude that, as Mr. Kovach’s insurer, |nNew England breached a duty to inform him that the Policy was about to be cancelled. Accordingly, we find that genuine issues of material fact exist as to whether New England breached a duty to the Kovaches, and reverse.

DECREE

For the above-mentioned reasons, we ■find that genuine issues of material fact exist because reasonable fact finders could conclude that New England breached a duty to the Kovaches to provide notification that the Policy was in jeopardy of being cancelled prior to surrendering the Policy to Hancock. Therefore, we reverse and remand for further proceedings.
REVERSED AND REMANDED
LOBRANO, J., Concurs in the Result.

. The trial court's judgment does not state whether the Kovaches claims were dismissed with or without prejudice.

. Counsel revealed during oral argument that the Kovaches settled with Hancock.

. La. R.S. 22:876: Assignment of policies: provides:
Subject to the terms of the policy relating to its assignment, life insurance policies, other than group life insurance policies, annuity, and health and accident policies providing benefits for accidental death, and under the terms of which the beneficiary may be changed upon the sole request of the insured, may be assigned either by pledge or transfer of title, by an assignment executed by the insured alone and delivered to the insurer, whether or not the pledgee or assignee is the insurer. This Section shall not prohibit the assignment by the insured of any certificate of insurance issued under a group life insurance policy. Any such assignment shall entitle the insurer to deal with the assignee as the owner or pledgee of the policy in accordance with the terms of the assignment, until the insurer has received at its home office written notice of termination of the assignment or pledge. No insurer shall prohibit the assignment to a viatical settlement provider of a policy otherwise assignable. (Emphasis added).